Filed 12/8/23  P. v. Johnson CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D082203 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. CR38392) |
| JAMAL HUSSEIN JOHNSON, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Riverside County, Matthew C. Perantoni, Judge.  Affirmed.

Cliff Gardner, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Steve Oetting and Michael Dolida, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

Carlos Montes Ortega was murdered by repeated blows to his head with a baseball bat during a robbery.  Although then-17-year-old Jamal

Hussein Johnson agreed to rob Ortega, his accomplice wielded the baseball bat and dealt the killing blows. As Ortega lay bleeding, Johnson picked up Ortega's wallet and stole the two dollars it contained. Johnson admits that he never physically stopped the beating or rendered any aid, but he claims that he told the killer to stop. Another witness saw Johnson hit Ortega with his hands. A jury convicted Johnson of felony murder and robbery.

Decades later, based on recent legislative changes to our state's murder laws, Johnson petitioned to vacate his murder conviction and to be resentenced under what is now Penal Code section 1172.6. The trial court denied the petition. It found that Johnson (1) was a major participant in the underlying robbery and (2) acted with reckless indifference to human life; thus, he was still liable for felony murder. In so finding, the court deemed incredible Johnson's testimony that he told the killer to stop, instead relying on the evidence that Johnson actively participated in the beating.

On appeal, Johnson challenges the reckless indifference to human life finding. We review that factual question for substantial evidence. (*People v. Oliver* (2023) 90 Cal.App.5th 466, 480 (*Oliver*).) Johnson's presence at the scene, failure to stop the killer, potential involvement in the assault, failure to render any aid, and decision to complete the robbery after the beating support the court's finding despite Johnson's youth. Therefore, we affirm.

BACKGROUND

I.

One evening in October 1990, 17-year-old Johnson walked down a street by an apartment complex with his 13-year-old girlfriend and Ana Al-Rad Levi Guinn. Guinn carried a baseball bat.

As Ortega walked toward them, Guinn asked Johnson if he " 'want[ed] to jack this dude?' " "To jack" someone means to take the person's money. In

2

a "snap decision," Johnson agreed. Guinn demanded money from Ortega. Ortega ran away. Guinn chased him, and Johnson followed.

Guinn caught up to Ortega and struck him in the head with the baseball bat. Ortega fell to the ground. Guinn continued to beat Ortega's head with the baseball bat, dealing at least four and up to eight blows.

Although Johnson was "[i]mmediately close" as Guinn beat Ortega, he did not stop the violence. A bystander who could overhear, but not see, the beating heard an unidentified male voice say " 'Stop. Are you crazy?' " Johnson testified at his resentencing hearing that he told Guinn to " '[s]top hitting him before you kill him. You tripping.' " But Valerine W., who watched from an apartment balcony, saw Johnson "hitting [Ortega] with his hands."

Eventually, a bystander pushed Guinn away and "grabbed" Johnson. But before that, Johnson took Ortega's wallet "from off the ground" beside the beaten man and pocketed two dollars.

Johnson never tried to help Ortega or call for medical aid, even after the beating stopped. Instead, he ran.

## II.

At the time of Johnson's trial, a defendant could be found guilty of murder under the felony-murder rule if someone was killed during a robbery in which he or she participated. Liability could attach without any showing of malice aforethought and even if the defendant was not the actual killer.

More recently, the Legislature reformed the state's homicide law and "significantly limited the scope of the felony-murder rule." (*People v. Strong* (2022) 13 Cal.5th 698, 707-708.) As amended, section 189 now limits felony-murder liability to, relevant here, those who (1) were "a major participant" in

a robbery and (2) "acted with reckless indifference to human life." (§ 189, subd. (e)(3).)

The Legislature created a procedure, now codified in section 1172.6, that allows those convicted under the old felony-murder rule to seek retroactive relief. (Stats. 2018, ch. 1015, § 4.) If the petitioner states a prima facie case for relief, the court must issue an order to show cause and hold an evidentiary hearing. (§ 1172.6, subds. (c), (d)(1).) At the hearing, the prosecution must "prove, beyond a reasonable doubt, that the petitioner is guilty of murder" under the amended law. (*Id.*, subd. (d)(3).) The court "may consider evidence previously admitted at any prior hearing or trial that is admissible under current law" as well as new evidence offered by the parties. (*Ibid.*) "The court may also consider the procedural history of the case recited in any prior appellate opinion." (*Ibid.*)

### III.

At the resentencing hearing, Johnson testified, but the parties otherwise relied on the prior trial record.

As conceded by defense counsel, the court found that Johnson was a major participant in the robbery.

The court also found that Johnson acted with reckless indifference to human life. In support, the court noted that Johnson "actively participated in beating" Ortega. Although Johnson was only 17 years old at the time, the court said: "[S]urely he had to know being struck in the head with a [baseball] bat could cause death." The court discredited Johnson's testimony that he told Guinn to stop as "self-serving statements, really unsupported by the bulk of the evidence and generally not credible." "[V]ery significant" to the court's ruling was the fact that Johnson "did absolutely nothing really to render aid" and instead stole from Ortega's wallet before leaving the scene.

4

Because the court found "beyond a reasonable doubt" that Johnson was a major participant who acted with reckless indifference to Ortega's life, it found him ineligible for resentencing. It thus denied Johnson's petition.

ANALYSIS

Johnson raises two issues on appeal. First, he argues that we should independently review the denial of his resentencing petition because the trial court relied largely on a cold record. Second, Johnson contends that, even under a more deferential standard, the prosecution failed to present sufficient evidence to prove he acted with reckless indifference to human life. For the reasons discussed below, we disagree on both points.

I.

Johnson urges us to apply an independent standard of review. Although he testified at the resentencing hearing, Johnson emphasizes the cold trial record to argue that we are "in just as good [of] a position as the trial court" to decide factual matters. For support, Johnson relies mostly on *People v. Vivar* (2021) 11 Cal.5th 510 (*Vivar*).

*Vivar*, however, is distinguishable. There, our Supreme Court held that appellate courts should independently review rulings on a motion to vacate a conviction under section 1473.1. (*Vivar*, *supra*, 11 Cal.5th at p. 524.) It selected that standard based on "multiple factors with special relevance" to section 1473.7 appeals. (*Id.* at pp. 526-527.) Notably, the questions at issue in *Vivar*, "while mixed," were "predominantly questions of law" that historically enjoyed independent review. (*Id.* at p. 524.)

Here, however, we face a factual question: did Johnson act with reckless indifference to human life? Answering this question "requires a fact-intensive, individualized inquiry." (*In re Scoggins* (2020) 9 Cal.5th 667, 683.) Even when a trial court works from a cold record, our Supreme Court

"see[s] no reason to withhold the deference generally afforded" questions of fact under the substantial evidence standard. (*People v. Perez* (2018) 4 Cal.5th 1055, 1066.) That key difference means we do not need to reach the factors used in *Vivar* to select a standard of review. We thus join a growing group of appellate courts in reviewing section 1172.6 petition denials for substantial evidence. (See, e.g., *People v. Clements* (2022) 75 Cal.App.5th 276, 298; *People v. Sifuentes* (2022) 83 Cal.App.5th 217, 233; *Oliver, supra,* 90 Cal.App.5th at p. 480.) The cases Johnson cites involving mixed questions of law and fact do not persuade us otherwise. (See, e.g., *Vivar, supra,* 11 Cal.5th at p. 524; *People v. Ault* (2004) 33 Cal.4th 1250, 1266; *In re Cudjo* (1999) 20 Cal.4th 673, 687-688; *People v. Ogunmowo* (2018) 23 Cal.App.5th 67, 76.)

Johnson argues that the *Vivar* court also applied independent review to a "pure question of fact." But our Supreme Court reached the factual aspect of the mixed questions of law and fact in *Vivar* only after determining that independent review applied to section 1473.7 appeals. (*Vivar, supra,* 11 Cal.5th at pp. 527-528.) It decided that, within that less deferential framework, the factual findings from a cold record could also be reviewed independently. (*Id.* at p. 528.) Johnson omits that our Supreme Court expressly limited its decision to section 1473.7 appeals and cautioned against the outcome he seeks. (*Id.* at p. 528, fn. 7.) Indeed, it reaffirmed the "familiar postulate" that, under the substantial evidence standard, appellate courts must defer to the trial court's factual determinations, whether derived from live or written evidence. (*Ibid.*)

The substantial evidence standard of review thus applies. Accordingly, we examine the entire record in the light most favorable to the prosecution to determine if a rational factfinder could find the defendant guilty beyond a

reasonable doubt.  (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)

Substantial evidence is reasonable, credible evidence of solid value, even if

circumstantial.  (*Ibid.*)  On appeal, we "must accept logical inferences that

the [factfinder] might have drawn from the circumstantial evidence."  (*People*

*v. Maury* (2003) 30 Cal.4th 342, 396 (*Maury*).)  "Conflicts and even testimony

[that] is subject to justifiable suspicion do not justify" reversal.  (*Id.* at

p. 403.)  "We resolve neither credibility issues nor evidentiary conflicts," as

they are the "exclusive province" of the trial court.  (*Ibid.*)  We will affirm the

order unless "upon no hypothesis whatever is there sufficient substantial

evidence to support it."  (*People v. Redmond* (1969) 71 Cal.2d 745, 755.)

II.

We now apply that standard to the merits of Johnson's appeal.

Johnson challenges the finding that he acted with reckless indifference to

human life.  We conclude that sufficient evidence supports that finding.

Reckless indifference to human life "encompasses a willingness to kill

(or to assist another in killing) to achieve a distinct aim, even if the defendant

does not specifically desire that death as the outcome of his actions."  (*People*

*v. Clark* (2016) 63 Cal.4th 522, 617 (*Clark*).)  Although the *Clark* court

analyzed a different Penal Code section, it addressed the same mental state,

and so its reasoning applies equally here.  (*People v. Montanez* (2023)

91 Cal.App.5th 245, 265 (*Montanez*).)  Johnson's briefing addresses only

*subjective* awareness, but reckless indifference to human life has "both

subjective and objective elements."  (*Clark*, at p. 617.)  "The subjective

element is the defendant's conscious disregard of risks known to him or her."

(*Ibid.*)  The objective element considers if defendant's actions " 'involved a

gross deviation from the standard of conduct that a law-abiding person in the

[defendant's] situation would observe.' "  (*Ibid.*)

7

The following non-exclusive factors are relevant to whether a defendant acted with reckless indifference to human life:

(1) knowledge or use of weapons;

(2) physical presence at the scene and opportunity to restrain the killer or aid the victim;

(3) duration of the felony;

(4) knowledge of the accomplice's propensity to kill;

(5) efforts to minimize the risk of violence during the felony; and

(6) youth.

(*Clark*, *supra*, 63 Cal.4th at pp. 618-623; *People v. Keel* (2022) 84 Cal.App.5th 546, 558-559 (*Keel*).)  No single factor is necessary, nor is any one necessarily sufficient.  (*Clark*, at p. 618.)

Here, we address the factors from weakest to strongest in terms of showing reckless indifference to human life.

The first factor—knowledge or use of weapons—does not support finding reckless indifference to human life.  Johnson saw Guinn holding the baseball bat when he agreed to rob Ortega.  But if the "mere fact of a defendant's awareness that a gun will be used in the felony is not sufficient to establish reckless indifference to human life," Johnson's awareness of a baseball bat is even less so.  (*Clark*, *supra*, 63 Cal.4th at p. 618.)

The sixth factor—Johnson's youth—though somewhat mitigating, is not dispositive.  Johnson turned seventeen shortly before the incident.  "A juvenile's immaturity and failure to appreciate the risks and consequences of his or her actions bear directly" on our analysis.  (*People v. Ramirez* (2021) 71 Cal.App.5th 970, 991.)  In *Ramirez*, evidence indicated that peer pressure influenced the teenage defendant, who feared he would be killed if he did not help with the felony.  (*Ibid.*)  In addition, "age may well have affected his

calculation of the risk of death posed by" the situation.  (*Ibid.*)  Here, in contrast, no evidence suggests that Johnson felt pressured to agree to rob Ortega.  And the court found that, even at Johnson's age, "surely he had to know being struck in the head with a bat could cause death."  Although we recognize that youth "can distort risk calculations," it "cannot overwhelm all other factors."  (*People v. Mitchell* (2022) 81 Cal.App.5th 575, 595.)  Based on other factors discussed below, we conclude that Johnson's youth does not preclude finding that he acted with reckless indifference to human life.

The third and fourth factors—duration and Johnson's knowledge of Guinn's propensity to kill—are close to neutral but slightly support the trial court's finding.  Knowledge of an accomplice's propensity to kill "may be evident before the felony."  (*Clark, supra*, 63 Cal.4th at p. 621.)  If the defendant is "keenly aware" that an accomplice is "both explosively violent and capable of committing sudden acts of violence," this factor can be satisfied without proof that the accomplice is a "known killer."  (*Montanez, supra*, 91 Cal.App.5th at pp. 272-273, 283-284.)  Here, there is no evidence Guinn had violent tendencies or Johnson was aware of any beforehand.  Guinn carrying around a baseball bat, without more, is not enough.  While Guinn said he "wanted to kill someone" that day, the record is unclear whether Johnson heard this statement.  Thus, Johnson does not appear to have known in advance of Guinn's propensity to kill.

Johnson likely developed this knowledge, however, after Guinn knocked Ortega to the ground and then continued to strike him in the head with the baseball bat.  Knowledge of an accomplice's propensity to kill may arise *during* the felony.  (*Clark, supra*, 63 Cal.4th at p. 621.)  As crimes unfold, "warning signs that the crimes posed a serious risk of danger to the victims" can "accumulate[ ]."  (*Montanez, supra*, 91 Cal.App.5th at p. 273.)

9

At this point, the propensity and duration factors meet. How long the felony lasts affects the degree to which a defendant can "observe additional facts showing the crimes posed a serious risk of danger." (*Montanez*, *supra*, 91 Cal.App.5th at pp. 273-274.) Johnson relies on *Keel*, where the "events unfurled in rapid succession," with the killer shooting the victim somewhat impulsively after unexpected resistance. (*Keel*, *supra*, 84 Cal.App.5th at pp. 560-561.) After considering all factors, the *Keel* court could not conclude that the defendant acted with reckless indifference to human life during a robbery that was "unplanned, spontaneous, and short in duration." (*Id.* at p. 562.) Here, like in *Keel*, "there [i]s no evidence the robbery was prearranged" and the entire encounter was brief, lasting somewhere between less than one minute and a few minutes. (*Id.* at p. 560)

But awareness of the risk to human life can develop over a short time, too. In *In re Loza*, the killer demanded money from the victim and counted down from five while threatening to shoot. (*In re Loza* (2017) 10 Cal.App.5th 38, 53.) "[A]ny objective observer would have appreciated the grave risk to life" during that countdown. (*Ibid.*) While only seconds long, that period gave the defendant "time to observe and react before the murder." (*Ibid.*) Similarly, here, Johnson objectively should have understood the grave risk to life after Guinn's first blow forced Ortega into a vulnerable position on the ground and Johnson saw him continue to deliver blow after blow to Ortega's head. Indeed, he acknowledges in his briefing that, "as the robbery progressed, it became clear that Guinn was willing to use force." Guinn struck Ortega's head *at least* four times. All but the first strike occurred while Ortega lay prone on the ground. The repeated blows, particularly after Ortega fell to the ground, gave Johnson time, if brief, to (1) realize Guinn's

beating could be fatal and (2) decide how to react. Because of the short duration, however, we give this factor limited weight.

The second and fifth factors—presence and opportunity to restrain or render aid and efforts to minimize the risk of violence—support finding that Johnson acted with reckless indifference to human life. Given the lack of preplanning, any effort to minimize violence overlaps with Johnson's presence and opportunity to restrain Guinn or aid Ortega.

Johnson concedes that he did not try to physically stop Guinn or render aid to Ortega. He tries to minimize the significance of his inaction by noting that "neither did the defendants in *Banks* or *Clark*." This comparison holds no weight, however, because the defendants in *Banks* and in *Clark* were not present during the killing. (*People v. Banks* (2015) 61 Cal.4th 788, 796-797 (*Banks*); *Clark, supra,* 63 Cal.4th at pp. 619-620.) Their absence could "significantly diminish culpability" because they had "no opportunity to dissuade the actual killer[ ] nor to aid the victims." (*Banks,* at p. 803, fn. 5.) Here though, Johnson admits that he chased Ortega and was "[i]mmediately close" during the beating. He thus had an opportunity to prevent loss of life that the *Banks* and *Clark* defendants lacked. The United States Supreme Court "stressed the importance of presence to culpability" for this reason. (*Clark, supra,* 63 Cal.4th at p. 619.)

Johnson relies heavily on his testimony—deemed "generally not credible" by the court—that he told Guinn to stop. Johnson contends that the court's credibility finding "must be rejected." Johnson cites two corroborating facts: (1) he informed a detective that he told Guinn to stop, as evidenced in defense counsel's closing argument at trial; and (2) a bystander testified that he heard an unidentified male say stop. We disregard the first fact, as "[a]rgument of counsel is not evidence." (*Fuller v. Tucker* (2000)

11

84 Cal.App.4th 1163, 1173.) The appellant bears the burden "to provide an adequate record" on appeal, yet Johnson admits the record does not include the transcript of this detective interview. (*People v. Akins* (2005) 128 Cal.App.4th 1376, 1385.) As for the second fact, the bystander, who heard but did not see the events, could not identify the speaker. His testimony thus does not definitively validate Johnson's.

More importantly, in a section 1172.6 proceeding, the trial court acts as an independent factfinder with "the power to judge credibility, resolve conflicts, weigh evidence, and draw inferences." (*People v. Saibu* (2022) 81 Cal.App.5th 709, 737, 744 (*Saibu*).) It thus has "wide latitude to believe or disbelieve witnesses, or even specific portions of their testimony, as it sees fit." (*In re Lopez* (2023) 14 Cal.5th 562, 591.) We review the record for substantial evidence; this appeal is not an opportunity for Johnson to relitigate factual disputes. "The fact that [Johnson] disagree[s] with the conclusions and inferences the superior court drew from the evidence does not mean the court" erred. (*Saibu*, at p. 744.)

Besides, "the existence of efforts to minimize violence does not necessarily foreclose a finding of reckless indifference to human life." (*In re Scoggins* (2020) 9 Cal.5th 667, 682.) Even if Johnson told Guinn to stop, his later actions showed indifference to Ortega's life. After the beating, Johnson knelt by the bleeding Ortega, not to help him, but to empty his wallet. An objective factfinder could view Johnson's decision as valuing monetary gain— a mere two dollars here—over human life.

In addition, another witness, Valerine, saw Johnson attack Ortega with Guinn. In denying resentencing, the court credited this testimony, noting that Johnson "actively participated" in the beating. Johnson faults the court for believing Valerine because of "numerous flaws" in her testimony. Those

purported flaws include: (1) the distance between Valerine's balcony and the events; (2) contrary to Valerine, Johnson's then-13-year-old girlfriend testified that he never hit Ortega; and (3) two other witnesses claimed that Valerine had taken drugs that day. Once again, Johnson asks us to invade the court's "exclusive province" to decide credibility and evidentiary conflicts. (*Maury*, *supra*, 30 Cal.4th 342, 403.) We decline to do so. Besides, Johnson himself testified that someone "grabbed [him] on up" after pushing Guinn away from Ortega. A reasonable factfinder could infer the intervenor did so because Johnson, too, was involved in the beating.

In disputing the reckless indifference finding, Johnson accuses the court of "[i]gnoring" large swaths of the record. He claims "part of the problem with the trial court's decision was that the parties" at the resentencing hearing "relied exclusively on the 1994 appellate opinion for their statements of facts" and did not mention more favorable bystander testimony.

We presume the trial court "duly considered the evidence presented to it." (*People v. Jones* (2022) 86 Cal.App.5th 1076, 1092.) "In the usual case, the fact that a court did not specifically mention certain evidence does not mean that the court 'ignored' that evidence." (*Ibid.*) Here, although the court took judicial notice of the earlier appellate opinion, it never said it relied on the opinion as a source of fact. The court reviewed the criminal file, including the trial testimony, and even re-reviewed some trial testimony after the resentencing hearing and before issuing its ruling. That the court did not specifically mention other bystanders' testimony does not mean it did not consider it before deciding Valerine's account was more accurate. Johnson, who must show affirmative error on appeal, fails to convince us that the court erred on these grounds.

Viewing the record in the light most favorable to the People, we conclude substantial evidence sufficiently supports the court's finding that Johnson acted with reckless indifference to human life.

DISPOSITION

We affirm the order denying Johnson's petition for resentencing.

CASTILLO, J.

WE CONCUR:


HUFFMAN, Acting P. J.


IRION, J.